UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                  )
K.E., et al.,                     )
                                  )
            Plaintiffs,           )
                                  )
       v.                         )   Civil Action No. 13-0084 (RBW)
                                  )
DISTRICT OF COLUMBIA,             )
                                  )
            Defendant.            )
_____)

**MEMORANDUM OPINION**

Plaintiffs Jane Leggett, in her own right and on behalf of her daughter, K.E., bring claims under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400-1491 (2012), alleging that the District of Columbia failed to: (1) provide K.E. with a free appropriate public education, (2) order an appropriate program and placement, and (3) render a proper decision during the administrative proceedings. Complaint for Declaratory and Injunctive Relief ("Compl.") ¶¶ 94-100. Currently before the Court are the parties' cross motions for summary judgment. After careful consideration of the parties' submissions and the administrative record in this case,[1] the Court concludes for the reasons below that it must grant the defendant's motion for summary judgment.

---

[1] In addition to the filings already referenced, including the Administrative Record ("A.R."), the Court considered the following documents in rendering its decision: (1) the Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Mem."); (2) the Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue (Pls.' Facts); (3) the Defendant's Opposition to Plaintiff's [sic] Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Def.'s Opp'n"); (4) the Plaintiffs' Opposition to the Defendant's Cross Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Pls.' Opp'n"); and (5) the Defendant's Reply to Plaintiff's [sic] Opposition to Defendant's Cross-Motion for Summary Judgment ("Def.'s Reply").

## I. Statutory Background

Under the IDEA, states and territories, including the District of Columbia, that accept federal educational funds must provide a free appropriate public education ("FAPE") to students with disabilities residing within their borders. See 20 U.S.C. § 1412(a)(1)(A). The IDEA defines a FAPE as an education which is "[(A)] provided at public expense, under public supervision and direction, and without charge; (B) meet[s] the standards of the State educational agency; (C) include[s] an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) [is] provided in conformity with the individualized education program." Id. § 1401(9). Once a student is deemed eligible to receive services under the IDEA, a team which includes the parent or parents of the student, certain teachers, and a representative of the local educational agency develops an individualized education program ("IEP") for the student in accordance with the requirements of the IDEA. Id. §§ 1414(d)(1)(A), (B). In addition to developing the IEP, the student's team determines an appropriate educational placement for the student. See id. § 1414(e). The statute requires that "[a]t the beginning of each school year, each local educational agency, State educational agency, or other State agency . . . shall have in effect, for each child with a disability in the agency's jurisdiction, an [IEP] . . . ." Id. § 1414(d)(2)(A).

The IDEA provides that a parent may submit a complaint to an educational agency "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child" and receive a hearing on the complaint conducted by an independent hearing officer. Id. §§ 1415(b)(6)(A), (f). The IDEA provides that when a parent alleges a procedural violation,

> a hearing officer may find that a child did not receive a [FAPE] only if the procedural inadequacies: (i) impeded the child's right to a free appropriate public

> education; (ii) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education to the parents' child; or (iii) caused a deprivation of educational benefits.

Id. § 1415(f)(3)(E). A party who is dissatisfied with the decision of the hearing officer may file a civil action in federal district court seeking review of the hearing officer's decision. Id. § 1415(i)(2)(A). If the hearing officer or district court determines that the agency failed to provide the student with a FAPE, the officer or court may require the agency to reimburse the parents of the child for the cost of enrollment at a private institution. Id. § 1412(a)(10)(C)(ii).

## II. Factual Background

K.E. is a seventeen-year-old child who has been deemed eligible to receive services under the IDEA as a student with several emotional disorders. A.R. at 9-10. Testing indicated that K.E.'s verbal abilities are "in the superior range of intelligence," A.R. at 127; however, K.E. is diagnosed with a Major Depressive Disorder, a Panic Disorder, a Post-Traumatic Stress Disorder, an Identity Problem, a Reading Disorder, and an Attention Deficit Hyperactivity Disorder. A.R. at 9. As a result of these diagnoses, K.E.'s personal therapist recommends that she be placed in a small, highly-structured therapeutic classroom with a low student to teacher ratio throughout the day as well as given time accommodations on tests and quizzes. Id.

Prior to the 2012-2013 school year, K.E. attended public schools within the District of Columbia Public Schools ("DCPS") System. A.R. at 6. During the 2011-2012 school year, K.E. attended Wilson Senior High School ("Wilson") and was enrolled in Advanced Placement ("AP") English, AP Biology, AP U.S. History, and Honors Pre-Calculus. A.R. at 7. At some point during the 2011-2012 school year, as a result of her various disorders, K.E. "engaged increasingly in self-destructive behaviors," was absent from approximately seventy-five percent of her classes, and began failing her classes. A.R. at 7.

In January 2012, K.E.'s mother requested that K.E. be evaluated for special education eligibility.[2] A.R. at 8. DCPS evaluated K.E. in the spring of 2012 and determined that her "social and emotional concerns [were] exerting the most significant impact on her educational functioning." A.R. at 191. DCPS also determined she met the criteria for a student with an emotional disturbance and was therefore qualified to receive services under the IDEA. Id. DCPS determined further that K.E. would "benefit from behavioral support to address issues related to her anxiety and depression, social skills development and self[-]esteem, and, in light of her executive functioning problems, [she] would require a higher level of adult-provided structure, direction, nurturing[,] and feedback than is needed by most [s]tudents." A.R. at 10. An IEP team meeting was held at Wilson on May 22, 2012, to develop K.E.'s IEP. Id.

The IEP Team convened again on both June 7 and 14, 2012, to complete K.E.'s IEP. Id. At the June 7, 2012 IEP meeting ("June 7 meeting"), DCPS presented a nine-page draft IEP to which Ms. Leggett submitted an additional seven pages of suggestions for inclusion into the IEP. A.R. at 228-37. Dr. Peggy Peagler, Wilson's Special Education Coordinator, testified at the administrative hearing that "based on the pages [Ms. Leggett] submitted to us we went line for line and incorporated it" into the draft IEP during the June 14, 2012 IEP meeting ("June 14 meeting"). A.R. 937. Because K.E.'s IEP was not completed during the June 14 meeting, the IEP team agreed to meet again in late August to finish it. A.R. at 11-12, 697, 705, 983. During June and July Ms. Leggett and her attorney made telephone calls and sent emails to DCPS to

---

[2] This request was the subject of a due process complaint filed by K.E.'s mother against DCPS on February 8, 2012, "seeking comprehensive special education evaluations for K.E. that had not been offered at the January 2012 meeting." A.R. at 9. This administrative complaint was withdrawn on March 14, 2012, after DCPS agreed to evaluate K.E. Id. At DCPS' suggestion, K.E. was privately tested by Dr. Vincent Culotta, a neuropsychologist. A.R. at 8.

schedule a meeting to complete K.E.'s IEP, but DCPS did not respond and the meeting never occurred. A.R. at 11-12.

During the summer of 2012, the plaintiffs applied for admission to one private special education school located within the District of Columbia, but K.E. was not admitted. A.R. at 263. The plaintiffs also applied for K.E.'s admission to The Grier School ("Grier"), an all-girls residential private school located in central Pennsylvania. A.R. at 10. At Grier, all of the core classes are taught in a general education setting by teachers who are not certified in special education. A.R. at 11. These classes are comprised of, at most, fourteen students per class. Id. Less than one percent of the students enrolled in Grier have IEPs. Id. "Grier does not have an Office of the State Superintendent of Education Certificate of Approval for nonpublic special education schools and programs[] serving students with disabilities funded by the District of Columbia," id., and is not primarily a school for children with learning or emotional issues, A.R. at 709. On August 6, 2012, after being informed that K.E. would be admitted to Grier, the plaintiff withdrew K.E. from Wilson and notified DCPS, through counsel, that she intended to enroll K.E. at Grier and seek public funding to pay for the costs of K.E.'s attendance at Grier. A.R. at 11. The plaintiff then filed a due process complaint on August 17, 2012, A.R. at 12, and on August 29, 2012, an unsuccessful "resolution session" was held, A.R. 12.

Classes began at Wilson on August 27, 2012, and K.E.'s IEP was completed two weeks later on September 11, 2012.[3] A.R. 309. K.E. never attended classes at Wilson during the 2012-2013 school year; instead, she began school at Grier when classes commenced on September 6,

---

[3] Although both parties agree that the IEP was completed on September 11, 2012, the plaintiff contends that she did not agree with the school system's proposal for services. A.R. at 12. This position is raised for the first time in the plaintiffs' opposition when they assert that "[t]he [b]elatedly [p]roposed DCPS IEP for the 2012-2013 [s]chool [y]ear is [p]rocedurally [f]lawed and [s]ubstantively [i]nappropriate for K.E." Pls.' Opp'n at 16-18. At no point of which the Court is aware did the plaintiffs seek any administrative review of the completed IEP and thus, despite their reference to their dissatisfaction with it, the Court need not address this claim.

2012. A.R. 13. Although K.E. did not have an IEP at Grier, A.R. at 12, she was provided learning assistance and academic support through Grier's Learning Skills Program, A.R. at 13. K.E. has attended her classes and performed well while attending Grier, earning "all A's and B's" and improving her "executive functioning skills." A.R. at 15.

**The Due Process Hearing and Decision**

The plaintiffs' administrative complaint alleged that DCPS denied K.E. a FAPE when it did not complete her IEP prior to the beginning of the 2012-2013 school year and by failing to offer K.E. an appropriate school placement. A.R. 3-4. The plaintiffs sought relief in the form of funding in the amount of $56,900 which included: (1) $46,800 for tuition, room, and board at Grier; (2) $2,500 for Grier's horseback riding program; (3) $3,800 for the Learning Skills program; and (4) $2,000 for the Student Support Evening Tutor services. A.R. at 348.

The due process hearing was held on October 15 and 17, 2012. A.R. at 4. The hearing officer heard testimony from Ms. Leggett; Dr. Vincent Culotta, who performed K.E.'s initial evaluation; Michelle Davis, K.E.'s Learning Skills teacher at Grier; Caren Crago, the Director of Counseling at Grier; Jamie Josephson, K.E.'s social studies teacher at Wilson; and Dr. Peagler. A.R. at 25. The District argued during the administrative hearing that the two-week delay in completing K.E.'s IEP was a de minimus procedural violation, and accordingly, did not amount to a denial of K.E.'s right to a FAPE. A.R. at 15.

On October 27, 2012, the hearing officer issued his decision. A.R. at 1. The Hearing Officer's Decision ("HOD") rejected the District's argument to the contrary, finding that "DCPS' failure to develop an IEP for [K.E.] prior to the start of the 2012-2013 school year resulted in [a] loss of [an] educational opportunity to [K.E.] and was a clear denial of FAPE." A.R. at 19. However, the HOD ultimately concluded that the plaintiffs did not meet their

"burden to demonstrate that [K.E.'s] full-time residential placement at [Grier] is necessary for educational purposes." A.R. at 24. Therefore, the hearing officer "den[ied K.E.'s mother's] request that DCPS be ordered to reimburse her for the costs of [K.E.'s] enrollment at [Grier] or to fund [K.E.'s] continued enrollment at that school for the remainder of the 2012-2013 school year."[4] Id.

On January 18, 2013, the plaintiffs sought review of the hearing officer's decision by this Court, see Compl. ¶¶ 65-71, and the parties have now both moved for summary judgment.

### III. Standard of Review

Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In IDEA cases in which "neither party seeks to present additional evidence, a motion for summary judgment 'operates as a motion for judgment based on the evidence comprising the record.'" Parker v. Friendship Edison Pub. Charter Sch., 577 F. Supp. 2d 68, 72 (D.D.C. 2008) (citations omitted).

A district court reviewing the findings and decision of an administrative hearing officer in an IDEA case "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Under this standard, the reviewing court owes the hearing officer "'less deference than is conventional' in administrative proceedings." Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir.

---

[4] Of note, when Ms. Leggett's attorney was asked by the hearing officer if they would be willing to accept "some alternative to choosing no reimbursement at all as opposed to some partial type of reimbursement?," A.R. at 1047, the attorney responded "No, we're asking for all of it," A.R. 1048.

7

1988) ("Kerkam I")). Moreover, "a hearing decision 'without reasoned and specific findings deserves little deference.'" Id. (quoting Kerkam v. Superintendent, D.C. Pub. Schs., 931 F.2d 84, 87 (D.C. Cir. 1991) ("Kerkam II")).

Nevertheless, "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. V. Rowley, 458 U.S. 176, 206 (1982) (internal citations omitted). Rather, the party challenging a hearing officer's determination must "at least take on the burden of persuading the court that the hearing officer was wrong, and . . . a court upsetting the officer's decision must at least explain its basis for doing so." Reid, 401 F.3d at 521 (quoting Kerkam I, 862 F.2d at 887). Moreover, "'[f]actual findings from the administrative proceeding are to be considered prima facie correct.'" Roark ex rel. Roark v. District of Columbia, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). Finally, a court must also "defer to the [hearing officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." Savoy v. District of Columbia, 844 F. Supp. 2d 23, 30 (D.D.C. 2012) (quoting S.H., 336 F.3d at 270).

### IV. Legal Analysis

The plaintiffs argue that the hearing officer correctly determined that K.E. was denied a FAPE but that his determination that Grier was not an appropriate placement was erroneous and should be reversed. Pls.' Mem. at 10-20. As noted above, the hearing officer made two conclusions of law. First, the hearing officer found that DCPS' failure to develop an IEP for K.E. before the first day of school constituted a denial of FAPE. A.R. at 17. Second, the hearing

officer found that although K.E. was denied a FAPE, the plaintiffs are not entitled to reimbursement for the costs associated with K.E.'s attendance at Grier because her residential placement at Grier was not "necessary for educational purposes." A.R. at 17-18

Under the IDEA, parents who unilaterally place their child at a private school without the consent of school officials do so at their own financial risk. Florence Cnty. Sch. Dist. 4 v. Carter, 510 U.S. 7, 15, (1993) (citation omitted). Parents in such situations may be reimbursed only if "the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate," 34 C.F.R. § 300.148(c) (2012); see also Florence Cnty., 510 U.S. at 15 (parent may only receive tuition reimbursement "if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act"); Holland v. District of Columbia, 71 F.3d 417, 420 n.3 (D.C. Cir. 1995) (noting that the circuit has ordered reimbursement "where the public agency violated [the IDEA] and the parents made an appropriate placement"). Since the plaintiffs are entitled to reimbursement for K.E.'s education at Grier only if the defendant deprived K.E. of a FAPE, the Court begins its analysis with that assessment. See 20 U.S.C. § 1412(a)(10)(C)(ii) (stating that reimbursement may be appropriate if "the agency had not made a free appropriate public education available to the child in a timely manner prior to [the private-school] enrollment").

**A. The delay in completing K.E.'s IEP**

The first issue the Court must address is whether K.E. was denied a FAPE by DCPS' failure to provide K.E. with a completed IEP prior to the start of the 2012-2013 school year. The hearing officer found that this failure "resulted in a loss of [an] educational opportunity to [K.E.] and was a clear denial of [a] FAPE." A.R. 17. The District argues that this determination was

9

erroneous, because the delay encompassed only eleven school days and therefore constituted a <u>de minimus</u> procedural violation that did not deny K.E. the right to a FAPE. The Court agrees with the hearing officer that K.E. was denied a FAPE due to DCPS' failure to complete the IEP by August 27, 2012.

Although a procedural violation may rise to the level of a denial of a FAPE, this Circuit, along with several others, has held that "an IDEA claim is viable only if those procedural violations affected the student's <u>substantive</u> rights." <u>Lesesne v. District of Columbia</u>, 447 F.3d 828, 834 (D.C. Cir. 2006) (denying relief under the IDEA because the plaintiff "made no effort to demonstrate . . . that [her son's] education was affected by any procedural violations DCPS might have committed"); <u>see e.g.</u>, <u>Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.</u>, 328 F.3d 804, 811-12 (5th Cir. 2003) ("procedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity"); <u>Knable ex rel. Knable v. Bexley City Sch. Dist.</u>, 238 F.3d 755, 765 (6th Cir. 2001) ("a procedural violation of the IDEA is not a per se denial of a FAPE; rather, a school district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only if such violation causes substantive harm to the child or his parents").

Under the IDEA's implementing regulations, substantive harm occurs if the preponderance of the evidence establishes that the procedural inadequacies: "(i) [i]mpeded the child's right to a FAPE; (ii) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) caused a deprivation of the educational benefit." 34 C.F.R. § 300.513(a)(2), <u>see also</u> 20 U.S.C. § 1415(f)(3)(E); <u>D.S. v. Bayonne Bd. of Educ.</u>, 602 F.3d 553, 565 (3d Cir. 2010) (citing 20 U.S.C. § 1415(f)(3)(E)) ("[a] procedural violation is actionable under the IDEA only if it results in a loss

of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits").

The Third Circuit recently considered the ramifications of the failure to complete an IEP prior to the beginning of the school year in C.H. v. Cape Henlopen School District, 606 F.3d 59 (3d Cir. 2010). There, like in this case, Cape Henlopen procedurally violated the IDEA by failing to complete an IEP for C.H. prior to the start of the school year. Id. at 63. There too, C.H.'s mother elected to unilaterally withdraw C.H. from his public school and place him in a private school.[5] Id. at 64. She then did not allow the school system access to C.H. to complete his evaluation. Id. The Court reasoned that although the school district missed the deadline for completing the IEP, it had demonstrated a "consistent willingness to evaluate C.H. and to develop an IEP" by sponsoring a psychological evaluation of C.H. and convening an IEP meeting with C.H.'s parents. Id. When C.H.'s parents brought suit claiming that C.H.'s right to a FAPE was violated because his IEP was not finalized by the first day of classes, the Third Circuit held that because of all the efforts taken by Cape Henlopen to evaluate C.H. and devise an appropriate IEP for him, coupled with the unreasonable actions taken by C.H.'s mother, the school district's failure to adopt a final IEP before the first day of school did not violate C.H.'s substantive rights. Id. at 69-70.

Much like C.H.'s parents, the plaintiffs argue that because "K.E.'s IEP remained incomplete at the start of the 2012-2013 school year . . . [the District] was to blame for this violation." Pls.' Reply at 3-4. As support for K.E.'s mother's decision to withdraw K.E. from DCPS enrollment three weeks prior to the IEP due date, the plaintiffs rely on G.G. ex rel.

---

[5] It is noteworthy that C.H.'s mother did not file her due process complaint until after the school year began and after Cape Henlopen's statutorily mandated IEP deadline had expired. Cape Henlopen, 606 F.3d at 64.

11

Gersten v. District of Columbia, 924 F. Supp. 2d 273 (D.D.C. 2013), in which another member of this Court held that the "[f]ailure to develop an IEP is essentially a denial of a FAPE." G.G. 924 F. Supp. 2d at 280. However, in the plaintiffs' efforts to inoculate the decision to unilaterally withdraw K.E. from Wilson, they fail to acknowledge that central to the Court's decision in G.G. was DCPS' initial failure to timely evaluate and make any eligibility determination regarding G.G., making it impossible for the IEP to be completed by the required date. The Court in G.G. also found compelling the fact that at no point during the proceedings did "the District . . . contend that an IEP was even in the process of being completed, by the . . . deadline or beyond." Id. Thus, because DCPS had not taken the steps necessary to develop an IEP within the time period required by the IDEA, the Court in G.G. found that the child was "effectively barr[ed] . . . from receiving a timely IEP," resulting in a procedural violation amounting to substantive harm. Id.

     Here, there is no dispute that, as was the case in Cape Henlopen, the District committed a procedural violation by failing to have K.E.'s IEP completed by the first day of the 2012-2013 school year. This was a violation of the plain mandate of the IDEA that a District should have an IEP in place "[a]t the beginning of each school year." 20 U.S.C. § 1414(d)(2)(A). Much like was the situation in Cape Henlopen, K.E.'s mother enrolled her in Grier based on her independent presumption that DCPS would fail to have an IEP in place when the school year commenced, and unlike in G.G., when K.E. was withdrawn from Wilson, DCPS still had time to complete the IEP by the first day of school on August 27, 2012.[6] However, although the Court is

---

[6] The Court acknowledges that although the first day of school for DCPS was August 27, 2012, the IEP was not completed until September 11, 2012. However, the Court finds it important to note that K.E. was withdrawn from DCPS several weeks before the first day of school. The court in Cape Henlopen considered the unilateral withdrawal of a student prior to the IEP deadline as a factor to consider when deciding the ramifications of a procedural violation.

12

troubled by Ms. Leggett's precipitous actions, and finds it disturbing that she withdrew K.E. from Wilson three weeks before K.E.'s IEP was legally required to be completed, because she made several attempts to have DCPS reconvene the IEP team meeting prior to K.E.'s withdrawal from Wilson,[7] her actions do not rise to the level of unreasonableness found in Cape Henlopen.

Despite Ms. Leggett's premature removal of K.E. from Wilson, the Court cannot overlook DCPS' culpability. Courts in this Circuit are willing to find a denial of a FAPE when DCPS has abrogated its responsibility and, as a result, the student's IEP was not completed prior to the beginning of the school year. See, e.g., Maynard v. District of Columbia, 701 F. Supp. 2d 116, 123-24 (D.D.C. 2010) (finding that it was a denial of a FAPE where, as a result of DCPS' failure to convene any IEP team meeting prior to the first day of school, the student's IEP was not developed by that date) (emphasis added); Alfono v. District of Columbia, 422 F. Supp. 2d 1, 5-8 (D.D.C. 2006) (finding that DCPS' failure to incorporate the findings of various evaluations in the student's IEP prior to the first day of school amounted to a denial of a FAPE until two months later when the student's "goals and objectives or a means for measuring her progress" were incorporated into her IEP) (emphasis added). The Court therefore rejects the defendant's argument that DCPS' failure to complete K.E.'s IEP prior to September 11, 2012, was merely a procedural violation. Unable to find any reason why Ms. Leggett's requests to reconvene the

---

[7] The record is unclear as to how extensive these efforts actually were. Upon reviewing the administrative record, the Court has found two email communications to DCPS from, or on behalf of, Ms. Leggett prior to August 6, 2012. In the first, Ms. Leggett made reference to the fact that she thought the IEP team had "made a lot of progress" and that she "talked with Ms. Lewis by phone about goals for the behavioral section of the IEP." A.R. 253. The second email was sent by Ms. Leggett's attorney on July 11, 2012, seeking to reconvene the IEP team meeting. A.R. at 260. However, this is the last communication that the Court has found in the record prior to Ms. Leggett's August 6, 2012 fax informing Wilson of her decision to enroll K.E. in Grier and seek public funding to pay for the child's enrollment at Grier. A.R. at 260-262.

IEP team went unanswered by DCPS and DCPS' failure to have the IEP in place by August 27, 2012, cause the Court to find that K.E. was denied a FAPE.[8]

## B. The Hearing Officer's Reimbursement Denial

Despite DCPS' failure to timely provide a FAPE to K.E. for the 2012-2013 school year, Ms. Leggett is only entitled to reimbursement if K.E.'s placement at Grier was appropriate. See Holland, 71 F.3d at 420 n.3 (D.C. Cir. 1995) (noting that this circuit has ordered reimbursement "where the public agency violated [the IDEA] and the parents made an appropriate placement"). Because the Court finds that the hearing officer correctly found that Grier was not an appropriate placement, it agrees that Ms. Leggett is not entitled to reimbursement for the expenses she seeks to recover. See, e.g., Florence Cnty., 510 U.S. at 15 (tuition reimbursement is only permitted if "the court or hearing officer finds that . . . the private school placement is appropriate").

The hearing officer held that "to determine whether a residential placement is appropriate, a court must analyze 'whether full-time placement may be considered necessary for educational purposes[.]'" A.R. at 21 (quoting McKenzie v. Smith, 771 F.2d 1527, 1534 (D.C. Cir. 1985)) (emphasis added). Applying the logic of McKenzie, 771 F.2d at 1534, he reasoned that "the test is not whether the Student receives educational benefit, but whether the full-time residential placement may be considered necessary for educational purposes." A.R. at 23. The hearing officer then made the following observations:

> In the present case, [Ms. Leggett] has not met her burden of proof to establish that [K.E.'s] . . . residential placement at [Grier] is necessary for educational purposes.

---

[8] It is this combination of facts that the Court finds persuasive. It does appear that DCPS was attempting to procedurally and substantially comply with the IDEA by ensuring that K.E. was properly evaluated prior to the completion of the 2011-2012 school year and conducting two IEP team meetings for the purpose of drafting an appropriate IEP that incorporated the findings of her evaluations. In both meetings, Ms. Leggett was afforded the opportunity to meaningfully participate and, by all accounts, K.E.'s IEP team was considering all of K.E.'s needs to develop as complete an IEP as possible. What ultimately tipped the scales for the Court was the absence of an IEP by the statutorily mandated due date.

14

> [Ms. Leggett] has adduced no evidence that [K.E.] requires placement at [Grier], or at any residential facility, for her medical, social, or emotional problems. To the contrary, [Ms. Leggett's] expert . . . recommended in his February 2012 neuropsychological evaluation report that [K.E.] receive consistent psychiatric services and regular psychotherapy on an "outpatient" basis. . . . Moreover, [Grier] is not a residential treatment center or a therapeutic boarding school. Very few of its students have IEPs. Even the Learning Skills program at [Grier] is an elective class, designed for any student still developing organizational or study skills, or in need of individual instruction in specific subjects.
>
> Neither does the evidence establish that [K.E.'s] residential placement at [Grier] is necessary for educational purposes. Former Social Studies Teacher [Jamie Josephson], who, of all the witnesses except for [Ms. Leggett], knew [K.E.] best and was most familiar with her educational issues and needs, opined that [K.E.] needed 1:1 support in her classes, which could be provided by a special education co-teacher in an inclusion classroom setting. [Ms. Leggett] also acknowledged in her testimony that an inclusion setting in all core classes might be appropriate for [K.E.], but contended that such an inclusion setting was not available in all classes at [Wilson]. At the September 11, 2012 IEP meeting, [Ms. Leggett's] co-counsel stated [Ms. Leggett's] "standing belief" that [K.E.] needed specialized instruction in inclusion classes throughout the school day. In his neuropsychological evaluation report, [Dr. Culotta] recommended that [K.E.] be placed in a small, highly structured, therapeutic classroom with a low student-to teacher ratio throughout her day. . . . It is clear from his report, however, that [Dr. Culotta] envisioned that [K.E.] would receive these services and accommodations at a nonresidential school.

A.R. at 22-23. Based on this evidence the hearing officer concluded that Ms. Leggett had "not met her burden to demonstrate that [K.E's] full-time residential placement at [Grier] is necessary for educational purposes." Id. at 24. He therefore concluded that Ms. Leggett was not entitled "to reimburse[ment] . . . for the costs of [K.E.'s] enrollment at [Grier] or to fund [K.E.'s] enrollment at [Grier] or to fund [K.E.'s] continued enrollment at that school for the remainder of the 2012-2013 school year." Id.

The Court agrees that the hearing officer's finding that Grier was not an appropriate placement for K.E. is supported by the administrative record. Part of this finding was based on the unproven need of K.E.'s placement in a residential setting. On this point the Court too agrees. See Anderson v. District of Columbia, 606 F. Supp. 2d 86, 90 n.1 (D.D.C. 2009) ("as

long as the [hearing officer's] decision is 'sufficiently detailed to permit the district court to understand the basis for the hearing officer's resolution of the parents' claims,' the Court should afford it due deference" (quoting J.P. ex rel. Peterson v. Cnty. Sch. Bd., 516 F.3d 254, 261 (4th Cir. 2008)). As is evident in his decision, the hearing officer clearly relied on the plaintiffs' witnesses in assessing the appropriateness of Grier with respect to what K.E. needed to be academically successful. Since the IDEA does not require a school district to pay for a private school education simply because that opportunity would be ideal for a student, the Court is unpersuaded by the plaintiffs' contention that any private school that provides a child an educational benefit is appropriate. See Roark, 460 F. Supp. 2d at 45 (quoting Rowley, 458 U.S. at 201, 198) ("[t]he IDEA's guarantee of a FAPE is that of a 'basic floor of opportunity . . . [that] consists of access to specialized instruction and related services which are individually designed to provide education benefit to the handicapped child' . . . . [T]here is no requirement for a state to provide services to maximize each child's potential . . . .").

Citing Wirta v. Dist. of Columbia, 859 F. Supp. 1 (D.D.C. 1994), counsel for the plaintiffs argue that in the District of Columbia all Ms. Leggett is required to show is that K.E. was placed in a school that is "reasonably calculated to enable the child to receive educational benefits." Pls.' Opp'n at 6. By the plaintiffs' assessment, the hearing officer needed only to determine if Grier provided an educational benefit to K.E. and that it was error for the hearing officer to consider whether residential placement was necessary. Id. This argument is tantamount to saying that Ms. Leggett has carte blanche right to select any private school in the country so long as K.E. received some educational benefit from the placement. This argument

defies logic and attempts to read the word <u>reasonable</u> out of case law upon which the plaintiffs rely.⁹

Furthermore, a finding that the selection of a school by a parent was unreasonable is not solely dependent on a determination that the private placement is an appropriate placement, but rather is informed based on a factual analysis of all of the events that lead to the selection. <u>See</u> <u>Maynard v. District of Columbia</u>, 701 F. Supp. 2d 116, 124-25 (D.D.C. 2010) (finding that even though the child was denied a FAPE and the private placement was appropriate, reimbursement for unilateral private placement was not appropriate when the parent acted unreasonably). "Courts fashioning discretionary equitable relief under the IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required." <u>Florence Cnty.</u>, 510 U.S. at 16. Courts may therefore reduce or deny tuition reimbursement "upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii)(III), <u>see also</u> 34 C.F.R. § 300.148(d)(3) (explaining that reimbursement for a unilateral private placement "may be reduced or denied" if actions taken by a parent are found to be unreasonable). "Because placement decisions implicate equitable considerations, . . . courts may also consider the parties' conduct." <u>Branham v. Gov't of the District of Columbia</u>, 427 F.3d 7, 12 (citing <u>Reid</u>, 401 F.3d at 524).

Aside from the unreasonableness of Ms. Leggett's decision to remove K.E. from Wilson three weeks before the start of the school year, at a time when the District had not yet failed in its obligations to K.E. under the IDEA, the Court also finds Ms. Leggett's decision to place K.E. at

---

⁹ The plaintiffs argue that "[t]he test of whether a parental placement is 'proper under the Act' is not whether the parental placement provides the equivalent of a FAPE . . . but rather if 'the education provided by the private school is 'reasonably calculated to enable the child to receive educational benefits.'" Pls.' Mem. at 13. However, in this Circuit, "proof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the [IDEA]." <u>Kerkam I</u>, 862 F.2d at 886 (reiterating that there is no requirement to "maximize the potential of handicapped children" when evaluating what is an "'appropriate' education").

a school far from the District of Columbia with an annual cost of $56,900, and which, acknowledged by Ms. Leggett's own testimony, is "not primarily a school for kids with learning or emotional issues" was unreasonable. A.R. at 709.

Compounding what, in this Court's opinion, is already an extremely unreasonable set of circumstances regarding the timing of K.E.'s withdrawal from Wilson and placement at Grier, is the fact that the plaintiffs never challenged the September 2012 IEP. Despite making a number of references to Ms. Leggett's dissatisfaction with the 2012 IEP, including an assertion, raised for the first time in their opposition brief, that the IEP is procedurally flawed and substantively inappropriate for K.E., at no point that the Court has been made aware, was an administrative complaint filed to address the merits of the IEP.[10] Instead, after the IEP was completed on September 11, 2012, K.E. remained enrolled at Grier. And as of the date of this Court's decision, K.E. has now been enrolled at Grier for approximately sixteen months without an administrative complaint having been filed challenging the September 11, 2012 IEP.

While the Court is sympathetic to Ms. Leggett's efforts to obtain the best possible education for K.E., giving all due consideration to the hearing officer's factual findings, and, after its own review of the administrative record, the Court finds that the plaintiffs have failed to show by a preponderance of the evidence that the hearing officer incorrectly determined that Grier is not an appropriate placement for K.E. Consequently, the plaintiffs are not entitled to reimbursement for the costs of K.E.'s placement at Grier.

---

[10] The Court acknowledges that Ms. Leggett's attorney, who was present at the September 11, 2011 IEP team meeting, did send a letter to Dr. Peagler expressing his concerns regarding the IEP. A.R at 310-11. However, there has been no subsequent administrative complaint filed of which the Court is aware.

18

## V. Conclusion

For the foregoing reasons, the Court concludes that the District of Columbia's failure to adopt an IEP for K.E. before the first day of DCPS' 2012-2013 school year violated K.E.'s right to a FAPE as required by the IDEA. The Court further concludes that the hearing officer correctly determined that Grier was not an appropriate placement for K.E. Thus, the Court finds that the plaintiffs are not entitled to reimbursement for K.E.'s unilateral placement at Grier. See 20 U.S.C. § 1412(a)(10)(C)(ii); Florence Cnty., 510 U.S. at 15 (citation omitted) (holding that parents "are entitled to reimbursement only if a federal court concludes that both the public placement violated the IDEA and that the private school placement was proper under the Act" and those who "unilaterally change their child's placement . . . do so at their own financial risk"). Accordingly, the defendant's motion for summary judgment is granted and the plaintiffs' motion for summary judgment is denied.

**SO ORDERED** this 23rd day of January, 2014.[11]

                                                              REGGIE B. WALTON
                                                              United States District Judge

---

[11] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.